Napton, judge,
delivered the opinion of the court.
The course which this case took in the circuit court would seem to indicate that the counsel who managed the case there did not have much confidence in the point which is solely relied upon for the reversal of the decree. At the hearing before the circuit court, a motion was made by the complainant to dismiss their bill without prejudice, and an exception was taken to the overruling of this motion. No point is *220 made upon the exception here, and it is now contended that upon the bill, answers and testimony, the complainants were entitled to a de-r cree.
We shall state very briefly some of the reasons suggested by a eare^ ful examination of the record, which have induced us to yield a ready concurrence in the disposition which the circuit court made of the cause.
The answer of Lane is full, explicit and utterly contradictory of ev-* ery allegation in the bill which could lay the foundation of a decree favorable to the complainants. This answer is not attempted to be disproved, except upon the matter of Doggett’s incompetency. The testimony on this head will be found substantially set forth in the statement, and it is not, in our judgment, of such a character as would authorize the court to set asido a contract upon the ground of mental imbecility or insanity.
It appears that Doggett, previous to 1829, when this sale to Lane was made, had been afflicted at intervals with convulsions or epileptic fits ; that these attacks were succeeded by partial paroxisms which ultimately produced his death, in 18.31. No doubt this disease impaired to some extent the mental, as it did the bodily faculties of Doggett, but there is an entire failure of j>roof to show that at the time of this contract, or even afterwards, there was any thing approaching to insanity, or such continircd imbecility of mind as would incapacitate the sufferer from transacting his usual business. Some of the witnesses express an opinion, that at times Doggett was incompetent to manage his own affairs, but no facts are given sufficient to warrant the inference that these opinions were well founded. Every incident related by the witnesses to prove his incompetency may as well be accounted for on a different hypothesis.
If there were circumstances of fraud or imposition in the case, snch as gross inadequacy of price, or concealment of facts essential to a proper understanding of the contract, we might look more narrowly into the evidence of incompetency. -But Lane’s answer disproves every thing like imposition or fraud. His account of the matter, which is entirely uncontradicted, is, that having been on a visit to a patient in Doggett’s neighborhood, he happened at his house about night-fall, and at his instance remained all night: that Doggett proposed to sell him his land, and stated his price : that he took time to consider this proposition, and about two months afterwards informed Doggett that he would buy it at the price proposed : that the bargain was thereupon conclu *221 ded, and Lane had a deed drawn up in St. Louis and sent it to Doggett’s residence, about twelve miles from the city, by a justice of the peace who is a witness in the case. This justice testifies that the deed was signed by Doggett without question, and apparently with a full understanding ,of its purport, and that his. wife (who is one of the complainants) executed her relinquishment of dower in the usual form, and after having been fully apprized of the character of the instrument. There surely could have been no imposition here, for Lane was not present at the execution of the deed, and when the contract was originally made, Lane was not attending Doggett as a physician, but visiting his house as a friend, and the proposition for the sale came from Doggett.
Nor is there any proof of inadequacy of price. Both Doggett and Lane were aware that Doggett’s title was defective. They both considered his title to about seventy acres as good, but as to the balance of the 770 arpens, it was amere speculation, and so understood by both parties. It cost Lane upwards of $2,000 to perfect the title, or at least to buy up such claims as were thought to threaten its stability. How are we to say that the price was inadequate ? By what critereon shall we determine the value of a speculation of this kind ? Doggett thought the price sufficient, as he himself proposed it, and Mrs. Doggett was not dissatisfied with it, as she made no objections, and both had ample time for reflection.
But there is another circumstance stated by Dr. Lane, and confirmed by some of the witnesses, which is entitled to weight. Long after this transaction, and up to Doggett’s death, Dr. Lane continued to be on friendly terms with the family. There was a relationship between them, and, after Doggett’s death, his widow continued to receive professional services and other acts of kindness from Dr. Lane rendered without compensation, and no intimation was ever suggested of this fraud upon her husband. Mrs, Doggett was permitted to remain in possession of this tract of land for several years after her husband’s death, as Dr. Lane’s tenant, and this tenancy was repeatedly acknowledged, and continued until the land passed from Dr. Lane to Ewing.
It is not very creditable to Mrs. Doggett to receive favors from a man whom she at the same time believed to have defrauded her husband, In fact her conduct shows most plainly that' she did not entertain this opinion of Dr. Lane until shortly before this suit was instituted. The bill was filed in 1845, and the deed to Lane was executed in 1829, An acquiescence for fifteen years in a fraud of this character, *222 accompanied as it must have been with a full knowledge of its existence from the time it was perpetrated, ought to be accounted for.
The deed from Doggett to Lane was a conveyance without warranty .—a circumstance which confirms the statement of Lane in his answer, that both Doggett and himself were fully apprised of the uncertainty of the title.
Upon the whole, without adverting to the details of the testimony, Dr. Lane’s conduct in this transaction seems to have been perfectly upright, and not a single circumstance has been proved tending to cast any suspicion of fraud or imposition. The only facts in the case which could have such a tendency, are, that he was- dealing with a man afflicted with a chronic disease, and was his family physician. These facts alone do not warrant an inference of fraud, especially when there are no attending circumstances to corroborate such an inference.
It is useless to consider the case with reference to the. defendant Ewing, who was a purchaser under executions against Lane, without notice of the particular character of Lane’s, title, or the manner in which it was acquired. Whether he would have been affected by Lane’s frauds, had any such been committed, we shall not consider, as no fraud was proved upon Lane. *
Although the propriety of dismissing the bill generally, notwithstanding the motion of the complainants to have it dismissed without prejudice, is not discussed in the written argument submitted to the court, yet as it is made a point in the assignment of errors, it is proper to dispose of it. After the case was fully submitted at the hearing, without any pretence that any additional facts could be procured, we think the court was fully justified in making a final decree. There must be an end to litigation in chancery as well as in a court of law. The chancellor has doubtless a discretion in such matters, but there was nothing in this case to show that this discretion was unsoundly exercised.
The other judges concurring, the decree is affirmed.